# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO HIRAM SANTILLAN, on behalf of all other similarly situated aggrieved employees,<br><br>Plaintiffs,<br><br>v.<br><br>VERIZON CONNECT, INC., a Delaware corporation, and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.:  3:21-cv-1257-H-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING FINAL APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION SETTLEMENT; AND**<br><br>**(2) APPROVING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE AWARD**<br><br>[Doc. No. 64.] |

On September 25, 2023, Plaintiff Antonio Hiram Santillan ("Plaintiff") filed an unopposed motion for final approval of class, collective, and representative action settlement and for attorneys' fees, costs, and class representative incentive award.  (Doc. No. 64.)  On February 12, 2024, the Court held a final approval hearing on the matter.

(Doc. No. 68.)  Kevin Barnes appeared on behalf of Plaintiff, and Nancy Nguyen and Carrie Gonell appeared on behalf of Defendant Verizon Connect, Inc. ("Verizon" or "Defendant").  (Id.)  No Class Member filed an objection and no objectors appeared at the hearing.  For the reasons discussed below, the Court grants Plaintiff's motion for final approval of the class, collective, and representative action settlement, and approves Plaintiff's request for attorneys' fees, costs, and class representative incentive award.

## **BACKGROUND**

### I.   **Factual and Procedural Background**

Verizon sells software to businesses.  (Doc. No. 41 at 2.)  Plaintiff worked for Verizon as a nonexempt Business Development Representative employee from approximately January 6, 2020 to December 9, 2020 in San Diego, California.  (Doc. No. 59, First Amended Complaint ("FAC") ¶ 7; Doc. No. 28 at 30.)  Plaintiff asserts several claims related to Verizon's alleged failure to pay wages and penalties owed, to provide legally mandated breaks, and to reimburse employee expenses.  (FAC ¶ 4.)

On May 19, 2021, Plaintiff filed a putative class action in San Diego County Superior Court that alleged the following claims: (1) failure to pay overtime wages at the legal overtime pay rate; (2) failure to provide all meal periods; (3) failure to pay all wages; (4) failure to reimburse business expenses; (5) violation of Labor Code §§ 212/450; (6) failure to timely furnish accurate itemized wage statements; (7) violations of Labor Code §§ 201-202; (8) unfair business practices; and (9) penalties under Labor Code § 2699. (Doc. No. 64-1, Declaration of Kevin Barnes ("Barnes Decl.") ¶ 2; Doc. No. 1-2.)  On July 12, 2021, Verizon removed the action to this Court.  (Doc. No. 64-1, Barnes Decl. ¶ 3; Doc. No. 1.)

On February 18, 2022, Plaintiff filed a motion for class certification.  (Doc. Nos. 28, 29.)  Verizon opposed the motion.  (Doc. No. 30.)  The Court granted in part and denied in part Plaintiff's motion for class certification.  (Doc. No. 41.)  The Court certified the following six (6) classes:

<u>Class 1 - Overtime Rate Class</u>: All California-based nonexempt employees employed by Defendant during the time period from May 19, 2017, to the present who received a Recognizing You bonus and worked overtime in the same pay period;

<u>Class 2 - Meal Period Class</u>: All California-based nonexempt employees employed by Defendant during the time period from May 19, 2017, to the present to whom Defendant did not provide a meal break (or a one hour payment for any violations);

<u>Class 3 - Reimbursement Class</u>: All California-based nonexempt Business Development Representative employees employed by Defendant during the time period from March 20, 2020, to July 1, 2020 who incurred unreimbursed phone expenses in discharging their duties for Defendant;

<u>Class 4 - Wage Statement Class</u>: All California-based nonexempt employees employed by Defendant during the time period from May 19, 2020, to the present for whom Defendant did not maintain accurate records pursuant to Labor Code § 226(a) and (e);

<u>Class 5 - Failure To Timely Pay Wages Class</u>: All California-based nonexempt employees employed by Defendant during the time period from May 19, 2018, to the present to whom Defendant failed to timely pay all wages due upon separation from employment from Defendant; and

<u>Class 6 - 17200 Class</u>: All California-based nonexempt employees employed by Defendant during the time period from May 19, 2017, to the present who were subjected to Defendant's unlawful, unfair, or fraudulent business acts or practices in the form of Labor Code and Wage Order violations regarding overtime wages, meal violations, unpaid wages, unreimbursed business expenses, wage statements, and payment of final wages.

(<u>Id.</u>)

On January 30, 2023, the parties mediated the case and came to a settlement.  (Doc. No. 64-1, Barnes Decl. ¶ 6.)  As part of the settlement, the parties agreed that Plaintiff would file a first amended complaint and include a cause of action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216.  (<u>Id.</u> ¶ 7.)  The Court granted Plaintiff leave to file a FAC and on May 9, 2023, Plaintiff filed the FAC.  (Doc. Nos. 58, 59.)  The FAC contains an additional cause of action for violations of the FLSA.  (FAC ¶¶ 92–101.)

On May 12, 2023, Plaintiff filed a motion requesting that the Court grant preliminary approval of the proposed class, collective, and representative action settlement, direct

notice to the settlement class, and schedule a hearing for final fairness review. (Doc. No. 60.) On June 13, 2023, the Court issued an order: (1) certifying the class for settlement purposes; (2) preliminarily approving class settlement; (3) confirming the settlement administrator; (4) approving class notice; and (5) scheduling a final approval hearing. (Doc. No. 62.) The Court appointed Simpluris, Inc. as Settlement Administrator, and confirmed Kevin T. Barnes, Vanessa M. Ruggles, and Ralphael A. Katri as Class Counsel. (Id.)

On September 25, 2023, Plaintiff filed the present motion requesting final approval of the class, collective, and representative action settlement and for attorneys' fees, costs, and class representative service award. (Doc. No. 64.)

## II.  **Settlement Agreement Details**

Following extensive discovery and a contested class certification motion, the parties participated in a mediation on January 30, 2023. (Doc. No. 64-1, Barnes Decl. ¶¶ 4, 6.) To prepare for the mediation, Plaintiff hired an economic data analyst expert to conduct damage calculations and an exposure analysis. (Id. ¶ 6.) The parties reached a settlement after accepting the mediator's proposal on several key terms. (Id.) On May 5, 2023, the parties finalized their Joint Stipulation of Class, Collective, and Representative Action Settlement and Release ("Settlement Agreement"). (Id. ¶ 7.)

Plaintiff, for settlement purposes, sought to certify one Class, defined as "all persons employed by Verizon Connect in California as non-exempt employees from May 19, 2017 through the earlier of the Preliminary Approval Date[1] or April 30, 2023," and two subset

---

[1]    The Settlement Agreement defines the "Preliminary Approval Date" as "the date the Court approves this Stipulation of Settlement, and the exhibits thereto, and enters an Order providing for notice to the Class, an opportunity to opt-out of the Class, an opportunity to submit timely objections to the settlement, and setting a hearing for Final Approval of the Settlement, including approval of attorneys' fees and costs." (SA ¶ 32.) The Court preliminarily approved the Settlement on June 13, 2023. (Doc. No. 62.) Accordingly, under the terms of the Settlement Agreement, the operative date for purposes of defining the Class is April 30, 2023.

classes: (1) a "FLSA Member" collective class; and (2) a "PAGA Member" representative class. (Doc. No. 60-2, Settlement Agreement ("SA") ¶¶ 4, 19, 29, Ex. 1 to Declaration of Kevin Barnes ("Barnes Decl.").)  The Settlement Agreement defines FLSA Members as "all persons employed by Verizon Connect in California as non-exempt employees from May 19, 2018 through the earlier of the Preliminary Approval Date or April 30, 2023." (Id. ¶ 19.) PAGA Members is defined as "all persons employed by Verizon Connect in California as non-exempt employees from March 15, 2020, through the earlier of the Preliminary Approval Date or April 30, 2023." (Id. ¶ 29.) There are 570 Class Members and 61,652 workweeks at issue.  (Doc. No. 64-1, Barnes Decl. ¶ 10.)

To settle this action, Verizon agrees to deposit a gross settlement amount of $1,625,000 (the "Gross Settlement Amount") into a non-revisionary, qualified settlement fund that will be managed by the Settlement Administrator.  (Id. ¶ 9; SA ¶¶ 22, 55.)  The amount will be distributed as follows:

(i)     $541,666.67 (33% of the Gross Settlement Amount) for the payment of Class Counsel's attorneys' fees;

(ii)    $29,470.75 for the payment of Class Counsel's costs;

(iii)   $11,000 for the payment of the Settlement Administrator's costs;

(iv)    $10,000 for the payment of a Class Representative Incentive Award to the named Plaintiff;

(v)     $25,000 to be distributed in pro rata shares to the FLSA Members based on their eligible employee service time for Covered FLSA Workweeks[2];

(vi)    $25,000 in Private Attorneys General Act ("PAGA") penalties to be distributed in the amounts of $18,750 (75%) to the California Labor and Workforce Development Agency ("LWDA") and $6,250 (25%) to be distributed in pro rata shares to PAGA Members based on their eligible employee service time for Covered PAGA Pay Periods[3]; and

---

[2]     The Settlement Agreement defines Covered FLSA Workweeks as "reflected on Verizon Connect's internal records, all workweeks from May 19, 2018 through the earlier of the Preliminary Approval Date or April 30, 2023, in which an FLSA member worked for Verizon Connect as a non-exempt employee in California, excluding any workweeks previously released by an FLSA Member."  (SA ¶ 11.)

[3]     The Settlement Agreement defines Covered PAGA Pay Periods as "reflected on Verizon Connect's internal records, all pay periods from March 15, 2020 through the

(vii) After the payments in paragraphs (i) through (vi) have been made, approximately $977,333.33 (the "Net Settlement Amount"), to be distributed to the Class Members based on their eligible employee service time for Covered Class Workweeks[4].

(Doc. No. 64-1, Barnes Decl. ¶¶ 9, 10; SA ¶ 55.) Verizon expects Class Members to receive an estimated $13.92 per workweek and the average Class Member to receive approximately $1,714.62. (Doc. No. 64-1, Barnes Decl. ¶ 10.) The highest payout will be $4,481.32. (Id.) Payments are allocated one-third to wages, one-third to interest, and one-third to penalties. (Id.) Verizon will issue a Form 1099 for interest and penalties, and a Form W-2 for wages. (Id.) FLSA Members and PAGA Members will receive additional and separate checks for their FLSA settlement payment and their PAGA payment. (Id. ¶ 11; SA ¶¶ 55(h), (i).) Meaning, a Class Member who is also a FLSA Member and a PAGA Member would receive three separate checks. See id.

On June 13, 2023, the Court granted certification of the proposed classes for settlement purposes. (Doc. No. 62.) The Court determined that Plaintiff's decision to combine the six (6) classes the Court previously certified did not change the Court's Rule 23(a) or Rule 23(b)(3) analysis. (Id. at 9.) Further, the Court also determined the FAC made a plausible showing that Plaintiff is similarly situated to the putative collective members. (Id. at 10.) Accordingly, the Court granted preliminary certification of the FLSA member collective class for settlement purposes. (Id.)

In its preliminary approval order, the Court also approved the Class Notice, the procedures for giving Class Members notice of the Settlement Agreement, and the procedures for Class Members to opt out, object, or dispute their number of workweeks.

---

earlier of the Preliminary Approval Date or April 30, 2023, in which a PAGA Member worked for Verizon Connect as a non-exempt employee in California." (SA ¶ 12.)

[4] The Settlement Agreement defines Covered Class Workweeks as "reflected on Verizon Connect's internal records, all workweeks from May 19, 2017 through the earlier of the Preliminary Approval Date or April 30, 2023, in which a Class Member worked for Verizon Connect as a non-exempt employee in California." (SA ¶ 10.)

(Id. at 15–18.)  On June 26, 2023, Verizon provided Simpluris with a mailing list containing the name, last known address, social security number, and pertinent employment information during the Class Period for 570 unique Class Members.  (Doc. No. 64-1, Declaration of Mary Butler ("Simpluris Decl.") ¶ 6., Ex. 3 to Barnes Decl.)  After receiving the mailing list, Simpluris processed and updated the list using the National Change of Address Database.  (Id. ¶ 7.)  On July 7, 2023, Simpluris mailed the Class Notice to the 570 Class Members via First Class Mail.  (Id. ¶ 8.)  The Class Notice informed Class Members of the August 21, 2023 deadline to postmark a written objection to the Settlement or to request exclusion from the Class.  (Doc. No. 64-1, Simpluris Decl., Ex. A ("Class Notice"), Ex. 3 to Barnes Decl.)  Simpluris represents that out of the 570 Class Notices mailed, eight (8) Notices were undeliverable even after Simpluris performed an advanced address search (i.e., skip trace) on the returned Notices.  (Doc. No. 64-1, Simpluris Decl. ¶ 9, Ex. 3 to Barnes Decl.)  The Class Notice included a toll-free telephone number, accessible 24 hours a day, 7 days a week, for the purpose of allowing Class Members to call Simpluris and to make inquires regarding the Settlement.  (Id. ¶ 4.)  The phone line will remain open throughout the settlement process.  (Id.)  As of September 25, 2023, Simpluris had not received any requests for exclusion, objections to the Settlement, or disputes regarding dates of employment for the Covered Class or FLSA Workweeks or PAGA Pay Periods from any Class Member.  (Id. ¶¶ 11–13.)  Accordingly, 100% of the Class is participating in the Settlement.  (Id. ¶ 11.)

On October 30, 2023, pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), Defendant served upon the appropriate federal and state officials a notice of the proposed settlement of this action.  (Doc. No. 67 at 2.)  According to Defendant's status report, dated January 31, 2024, Defendant represents that it has not received any responses to the mailings of the CAFA notices other than confirmations of receipt.  (Id.)

///

///

## DISCUSSION

**I.   Final Certification of Settlement Class and Collective**

The Court previously found that all the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) had been met in its order certifying six (6) classes.  (Doc. No. 41.)   In its order granting preliminary approval and certifying the Class for settlement purposes, the Court noted that the parties' decision to combine the six (6) certified classes for settlement did not change the Court's Rule 23(a) or Rule 23(b)(3) analysis.  (Doc. No. 62 at 9.)   The Court also certified the proposed FLSA Member collective class because the FAC made a plausible showing that Plaintiff was similarly situated to the putative collective members.   (Id. at 10.)   Given that no substantive issues concerning class certification have been raised since the Court granted preliminary approval of the settlement class, the Court incorporates its prior analysis by reference, (Doc. Nos. 41, 62), and finds that final class and collective action certification for settlement is appropriate.

**A. The Rule 23 Class**

The Court certifies the following as the Class Members: "all persons employed by Verizon Connect in California as non-exempt employees from May 19, 2017 through the earlier of the Preliminary Approval Date or April 30, 2023."  (SA ¶ 4.)

**B. The FLSA Member Class**

The Court certifies the following as the FLSA Member collective class: "all persons employed by Verizon Connect in California as non-exempt employees from May 19, 2018 through the earlier of the Preliminary Approval Date or April 30, 2023."  (SA ¶ 19.)

**II.   Final Approval of Class Action Settlement**

District courts must approve class action settlements.   Fed. R. Civ. P. 23(e). Specifically, Federal Rule of Civil Procedure 23(e)(1)-(5) requires a district court to: (1) ensure notice is sent to all class members; (2) hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (3) confirm that the parties seeking approval file a statement identifying the settlement agreement; and (4) be shown that class members were given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)-(5).  Class Counsel filed the

3:21-cv-1257-H-KSC

Settlement Agreement on May 12, 2023, (Doc. No. 60-2), and Class Members were given an opportunity to object on or before August 12, 2023. (Doc. No. 64-1, Simpluris Decl., Class Notice, Ex. 3 to Barnes Decl.)  The Court did not receive any objections to the Settlement Agreement.  Following the final fairness hearing, the Court evaluates the adequacy of notice and conducts its final review of the settlement.

### A. Adequacy of Notice

Adequate notice of the class settlement must be provided under Federal Rule of Civil Procedure 23(e).  "While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice." Winans v. Emeritus Corp., No. 13-CV-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016); see also, Silber v. Mabon, 18 F.3d 1449, 1453-54 (9th Cir. 1994) (explaining that the district court need not ensure all class members receive actual notice, only that "the best practicable notice" is given).

The Court previously reviewed the content of the Class Notice, the method for providing notice, and the procedure for Class Members to opt out, object, and/or dispute their number of workweeks at the preliminary approval stage and found each to be satisfactory under Rule 23(c)(2)(B) and Rule 23(c)(3).  (Doc. No. 62 at 15–17.)  Following the grant of preliminary approval, Simpluris received the list of names, contact information, and other pertinent employment information for 570 unique Class Members from Verizon. (Doc. No. 64-1, Simpluris Decl. ¶ 6, Ex. 3 to Barnes Decl.)  On July 7, 2023, after processing and updating the Class Member list using the National Change of Address Database, Simpluris mailed the Class Notice to 570 Class Members via First Class Mail. (Id. ¶ 8.)  The Class Notice informed Class Members of the August 21, 2023 deadline for Class Members to submit a request for exclusion, object to the Settlement, or dispute the number of workweeks. (Id. ¶ 10.)  Simpluris represents that a total of eight (8) class notices have been deemed undeliverable because Simpluris found no updated address using skip tracing. (Id. ¶ 9.)  Simpluris established a toll-free telephone number where Class Members could call the Settlement Administrator and make inquiries regarding the Settlement.  (Id.

¶ 4.)  As of September 25, 2023, Simpluris had not received any requests for exclusion, objections to the Settlement, or disputes regarding dates of employment for the Covered Class or FLSA Workweeks or PAGA Pay Periods from any Class Members.  (Id. ¶¶ 11–13.)  Accordingly, 100% of the Class is participating in the Settlement.  (Id. ¶ 11.)

Given the above, the Court finds that Simpluris provided adequate notice per the Court's order, (Doc. No. 62), and satisfied Rule 23(e).

### B. Final Fairness Determination

On February 12, 2024, the Court held a final fairness hearing.  (Doc. No. 68.)  Kevin Barnes appeared on behalf of Plaintiff.  (Id.)  Carrie Gonell and Nancy Nguyen appeared on behalf of Verizon.  (Id.)  At the final approval stage, Rule 23(e) requires a court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable."  Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).  To make this determination, district courts in the Ninth Circuit consider several factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.  Id.  "In addition, the settlement may not be the product of collusion among the negotiating parties."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).  A proposed settlement must additionally meet the factors enumerated in Federal Rule of Civil Procedure 23(e)(2)(A)-(D).

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  In re Heritage Bond Litigation, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (quoting Class Plaintiffs, 955 F.2d at 1276).  The Ninth Circuit favors deference "to the private consensual decision of the [settling] parties,"

particularly where the parties are represented by experienced counsel.  <u>Rodriguez v. West Publishing Corp.</u>, 563 F.3d 948, 965 (9th Cir. 2009).  "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value."  <u>Id.</u>

### 1. The Strength of Plaintiffs' Case and the Risk of Further Litigation

Both parties have expended significant time, effort, and resources supporting their positions, and they would continue to do so if the settlement failed to receive final approval. Class Counsel represents that they carefully weighed how the length and risks of trial and the perils of litigation affect the value of the claims.  (Doc. No. 64-1, Barnes Decl. ¶ 13.) Class Counsel considered the affirmative defenses asserted by Verizon, the prospect of an adverse summary judgment ruling, the difficulties of complex litigation, the lengthy process of establishing damages, and the risks and delays of appeal.  (<u>Id.</u>)  These considerations led Class Counsel to conclude that a timely settlement would be best for everyone involved.  (<u>Id.</u>)  <u>See</u> <u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement.") (internal quotation marks and citation omitted).  The Court concludes that the strength of the parties' positions as well as the risk of further litigation militate in favor of approving the settlement.

### 2. The Risk of Maintaining Class Action Status through Trial

The Court already granted class certification of six (6) classes.  (Doc. No. 41.) Accordingly, the Court finds that there is little to no risk of maintaining class action status throughout trial.  This factor does not weigh in favor of final approval.  <u>Martin v. Sysco Corp.</u>, No. 116–CV–00990–DAD–SAB, 2019 WL 3253878, at *4 (E.D. Cal. July 19, 2019) (finding little to no risk of maintaining class action status when the court previously granted class certification).

///

///

### 3.  The Settlement Amount

In determining whether a settlement agreement is substantively fair to the class, courts must balance the value of plaintiffs' expected recovery against the value of the settlement offer.  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  The Ninth Circuit has explained that "the proposed settlement is 'not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.'"  Martinez v. Semi-Tropic Coop. Gin & Almond Huller, Inc., No. 1:19-CV-1581 JLT CDB, 2023 WL 3569906, at *14 (E.D. Cal. May 19, 2023) (emphasis in original) (quoting Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted)).

Here, the parties agreed to settle all claims for the Gross Settlement Amount of $1,625,000.  Class Counsel asserts that the Gross Settlement Amount represents over 50% of the maximum potential value of the case.  (Doc. No. 60-1, Barnes Decl. ¶ 29.)   After deducting for fees and costs, the Net Settlement Amount offered to the Class Members totals approximately $977,333.33.  (Doc. No. 64-1, Barnes Decl. ¶ 10.)   The average recovery for each Class Member will be $1,714.62 and the highest payout will be $4,481.32.  (Id.)  This settlement is reasonable when compared with other wage and hour settlements approved in recent years by California federal courts.  See e.g., Sarabia v. Ricoh USA, Inc., No. 820–CV–00218–JLS–KES, 2023 WL 3432160, at *1, 5 (C.D. Cal. May 1, 2023) (finding wage and hour class action settlement with an average net payout of $1,119 per class member reasonable); Mondrian v. Trius Trucking, Inc., No. 119–CV–00884–ADA–SKO, 2022 WL 6226843, at *6 (E.D. Cal. Oct. 7, 2022) (determining wage and hour class and collective action settlement reasonable where average class member received $1,528.81); see also Glass v. UBS Fin. Servs., Inc., No. C–06–4068–MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009) (approving settlement of wage and hour claims where settlement amount represented 25-35% of the maximum estimated damages).

This settlement is a good result for the Class and eliminates the risks, expenses, and

delay associated with continued litigation.  Moreover, the Gross Settlement Amount is the result of arm's-length negotiation conducted by experienced counsel and an experienced mediator.  Accordingly, the Court concludes that the amount offered in settlement weighs in favor of granting final approval of the settlement.

### 4. The Extent of Discovery Completed and Stage of the Proceedings

Prior to reaching the proposed Settlement Agreement, the parties engaged in significant discovery and substantive briefing over the course of approximately two years of litigation.  The parties engaged in extensive discovery, including production of Verizon's policies, time records, pay records, expense reimbursement records and sales call log records for 50% of the class members, and depositions of three Rule 30(b)(6) witnesses for Verizon and Plaintiff.  (Doc. No. 64-1, Barnes Decl. ¶ 4.)  The parties also fully briefed a contested class certification motion.  (Id.; Doc. Nos. 28, 29, 30, 31, 34.) Following the Court's order on class certification, on January 30, 2023, the parties engaged in mediation with an experienced and highly regarded mediator.  (Doc. No. 64-1, Barnes Decl. ¶ 6.)  To prepare for the mediation, Plaintiff conducted damages calculations and an exposure analysis using an economic data analyst expert.  (Id.)  The parties reached settlement through the mediator's proposal and further negotiations following the mediation.  (Id.)  Considering this history, the record supports the conclusion that the parties conducted sufficient discovery to allow them to make an informed decision to settle this case.  Ontiveros v. Zamora, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("[T]he parties' apparent careful investigation of the claims and their resolution in consideration of the views of a third party mediator weigh in favor of settlement.").

### 5. The Experience and Views of Counsel

Class Counsel has extensive experience acting as counsel in wage and hour class actions.  (See Doc. No. 64-1, Barnes Decl. ¶ 19; Doc. No. 64-2, Declaration of Vanessa Ruggles ("Ruggles Decl.") ¶ 4; Doc. No. 64-3, Declaration of Raphael Katri ("Katri Decl.") ¶ 4.)  Class Counsel recommends the settlement as fair, reasonable, adequate and in the best interests of the Class.  (Doc. No. 64 at 8, 16.)  The Court finds this factor weighs in

favor of granting final approval.

### 6. Presence of a Government Participant

No government entity participated in this case. (Doc. No. 64-1, Barnes Decl. ¶ 37.) However, the proposed Settlement Agreement will result in $25,000 in PAGA penalties, $18,750 of which will be paid to the LWDA.  Class Counsel provided notice of the settlement to the LWDA prior to filing Plaintiff's motion for preliminary approval.  (Id.) As of September 25, 2023, the LWDA has not made any objections to the proposed settlement.  (Id.)  Because the Class shares civil penalties with the State of California, this factor weighs in favor of final approval of the settlement.  Cordova v. BAE Sys. Tech. Sols. & Servs., Inc., No. 20-CV-2425 JLS (MDD), 2022 WL 298365, at *8 (S.D. Cal. Feb. 1, 2022) (weighing PAGA penalties in favor of settlement approval and collecting cases).

### 7. The Reaction of the Class Members to the Proposed Settlement

There are 570 Class Members.  (Doc. No. 64-1, Barnes Decl. ¶ 10.)  As of September 25, 2023, no Class Members have objected to the settlement, requested exclusion, or disputed dates of employment.  (Doc. No. 64-1, Simpluris Decl. ¶¶ 11–13, Ex. 3 to Barnes Decl.)  The complete lack of objections indicates the adequacy of the settlement.  See Benitez v. W. Milling, LLC, No. 1:18-CV-01484-SKO, 2020 WL 3412725, at *7 (E.D. Cal. June 22, 2020) ("[I]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (citation omitted). Accordingly, the Class Members' reaction weighs in favor of granting final approval.

### 8. No Subtle Signs of Collusion

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class.  Staton, 327 F.3d at 960.  The Ninth Circuit has articulated the following as the "subtle signs" of collusion, including: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;" (2) the existence of a "clear

14

sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," or a provision under which defendant agrees not to object to the attorneys' fees sought; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted).

Here, there is no evidence of overt misconduct nor any indication of collusion. The requested attorneys' fees are reasonable considering the record and extensive time spent by Class Counsel, and the results achieved. See infra Section V.A. There is no "clear sailing" agreement. (See generally SA.) The $10,000 class representative incentive award is fair and reasonable and does not appear to be the result of collusion. See infra Section V.C. Settlement Class Members will receive meaningful monetary distributions even after deducting for awards, costs, and fees. (Doc. No. 64-1, Barnes Decl. ¶ 10.) Additionally, none of the funds will revert to Verizon. (Doc. No. 64 at 8.) The proposed settlement agreement resulted from significant arms-length negotiation with a respected mediator after two years of litigation. (Doc. No. 64-1, Barnes Decl. ¶ 6.) See Couser v. Comenity Bank, 125 F. Supp. 3d 1034, 1042 (S.D. Cal. 2015) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").

After considering all applicable factors, the Court concludes the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 960.

## III.   Final Approval of FLSA Collective Settlement

The Settlement Agreement releases claims under the FLSA. (SA ¶ 35.) FLSA claims can be settled only with the supervision and approval of the United States Department of Labor or a federal district court. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982); Ambrosino v. Home Depot U.S.A., Inc., No. 11cv1319-L-MDD, 2014 WL 3924609, at *1 n.1 (S.D. Cal. Aug. 11, 2014) (collecting cases indicating that "district courts in the Ninth Circuit have followed Lynn's Food Stores"); see also Yanez v. HL Welding, Inc., No. 20CV1789-MDD, 2022 WL 788703, at

*8 (S.D. Cal. Mar. 15, 2022).  A settlement warrants approval if it "reflect[s] a reasonable compromise of disputed issues."  <u>Lynn's Food Stores</u>, 679 F.2d at 1354.

First, the Court must determine whether there is a bona fide dispute over Verizon's FLSA liability.  <u>See</u> <u>id.</u>  After the Court granted Plaintiff's motion for class certification, several disputed factual and legal questions remained, including liability on overtime claims, minimum wage claims, and issues relating to damages.  (Doc. No. 60-1, Barnes Decl. ¶¶ 22–30.)  Each of these appears to be genuinely disputed.

Second, the Court considers whether the compromise is reasonable.  As explained above, the average recovery for each Class Member will be approximately $1,714.62 and the highest payout will be approximately $4,481.32.  (Doc. No. 64-1, Barnes Decl. ¶ 10.)  The parties also engaged in substantial discovery prior to reaching a settlement.  <u>See</u> <u>supra</u> Section II.B.4.  Based on these factors, the Court finds that the settlement is reasonable and provides meaningful relief given the inherent risks in continued litigation over the issues disputed in this action.  The Court also finds that the scope of Class Members' release of claims is appropriately limited to claims that were asserted in the FAC or reasonably could have arisen out of the same facts alleged in the FAC.  (<u>See</u> SA ¶ 35.)  As such, the Court approves the FLSA collective settlement.

## IV.   <u>Final Approval of PAGA Penalties</u>

The Settlement Agreement resolves claims brought under PAGA.  (SA ¶ 36.)  "A PAGA representative action is . . . a type of qui tam action" where a private plaintiff pursues a dispute between an employer and the California LWDA as the proxy or agent of the state.  <u>Haralson v. U.S. Aviation Servs. Corp.</u>, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019); Cal. Lab. Code § 2699(a).  "[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state," courts must "review and approve any [PAGA] settlement."  <u>Ramirez v. Benito Valley Farms, LLC</u>, No. 16-CV-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017); Cal. Lab. Code § 2699 (l)(2).   Proposed

settlements must also be submitted to the LWDA.[5]  Cal. Lab. Code § 2699 (l)(2).  No binding authority sets forth the proper standard of review for PAGA settlements; however, California district courts often apply "a Rule 23-like standard, asking whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes.'"  Arredondo v. Sw. & Pac. Specialty Fin., Inc., No. 118CV01737DADSKO, 2022 WL 2052681, at *9 (E.D. Cal. June 7, 2022) (quoting Haralson, 383 F. Supp. 3d at 972).

Here, the Settlement Agreement provides for $25,000 in civil PAGA penalties.  (SA ¶¶ 55(d), (e).) Pursuant to PAGA, 75% of the civil PAGA penalties, or $18,750, will go to the LWDA, and 25%, or $6,250, will be distributed proportionally to all PAGA Members.  (Id.); see also Cal. Lab. Code § 2699(i).  Class Counsel states that this amount represents 1.5% of the Gross Settlement Amount and is higher than PAGA allocations in other court approved settlements.  (Doc. No. 64 at 17.)  There have been no objections from the LWDA or Class Members regarding the allocation for PAGA penalties.  (Doc. No. 64-1, Barnes Decl. ¶ 37; Doc. No. 64-1, Simpluris Decl. ¶¶ 11–13, Ex. 3 to Barnes Decl.)  Therefore, the Court finds that the Settlement Agreement's $25,000 PAGA penalty is reasonable, fundamentally fair, and adequate.  See Alcala v. Meyer Logistics, Inc., No. CV177211PSGAGRX, 2019 WL 4452961, at * 9 (C.D. Cal. June 17, 2019) (collecting cases in which courts approved PAGA penalties between zero and two percent of the gross settlement amount).

## V.   Attorneys' Fees, Costs, and Incentive Payment to Class Representative

Having granted final approval of the settlement, the Court now turns to Class Counsel's request for attorneys' fees, costs, and an incentive payment to the class representative.  Here, Class Counsel seeks $541,666.67 in attorneys' fees; $29,470.75 in reimbursement

---

[5]     In its order granting preliminary approval, the Court determined Class Counsel properly notified the LWDA and satisfied this requirement.  (Doc. No. 62 at 15; Doc. No. 64-1, Barnes Decl. ¶ 37.)

for litigation costs; $11,000 in settlement administration costs; and $10,000 as an incentive payment to the class representative.  (Doc. No. 64 at 11–12.)

**A. Attorneys' Fees**

Pursuant to Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  In re Bluetooth, 654 F.3d at 941.

With respect to the attorneys' fees, "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark" in common fund cases.  Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010); Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 738 (9th Cir. 2016).  This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).  Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable.  Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000).  The Ninth Circuit has identified several factors that may be relevant in determining if the award is reasonable, including: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).

Here, Class Counsel request an award of $541,666.67 in attorneys' fees to be paid from the Gross Settlement Amount.  (Doc. No. 64, Barnes Decl. ¶ 10.)  The requested amount of attorneys' fees is 33% of the total settlement fund of $1,625,000.  (Id.)  This is higher than the Ninth Circuit's 25% benchmark for common fund cases.  Nevertheless, the overall award Class Counsel achieved for the class was quite favorable, and the risks of

continuing to litigate this case were real and substantial.  See supra Section II.B.1. Moreover, Class Counsel took this case on a contingent fee basis, bearing the entire risk and cost of litigation.  (Doc. No. 64-1, Barnes Decl. ¶ 21.)  Class Members received notice of the requested attorneys' fees award, and no Class Members objected.  (Doc. No. 64-1, Simpluris Decl. ¶¶ 11–13, Ex. 3 to Barnes Decl.)  The requested fee award is in line with what other district courts in this Circuit have awarded in cases where class counsel took the case on contingency and no class member objected or opted out of the settlement.  See, e.g., Anthony Ayala v. U.S Xpress Enterprises, Inc., et al., No. EDCV 16-137-GW-KKX, 2023 WL 6559786, at *7 (C.D. Cal. Sept. 15, 2023) (approving 33% fee award in wage and hour class action where class counsel took the case on contingency and no class member objected or opted out of the settlement); Ochinero v. Ladera Lending, Inc., No. SACV191136JVSADSX, 2021 WL 4460334, at *8 (C.D. Cal. July 19, 2021) (approving 33% fee award from common fund settlement where counsel took the case on contingency and no class member objected); see also Arredondo., 2022 WL 2052681, at *12-15 (approving 30% fee award from common fund wage and hour settlement where counsel took the case on contingency and there were no "objections to the settlement or requests for exclusions").

Finally, as a cross-check, Class Counsel represents that the fees calculated under the lodestar method would be $443,180.  (Doc. No. 64-1, Barnes Decl. ¶ 26.)  Thus, the amount Class Counsel requests ($541,666.67) is approximately 1.22 times what Class Counsel would receive under the lodestar method ($443,180).  See In re Bluetooth., 654 F.3d at 944-45 (encouraging district courts to cross-check their calculations under the percentage-of-recovery method against the lodestar method).  A multiplier of 1.22 is well within the accepted range for common fund cases where class counsel took the case on a contingency fee arrangement.  See Vizcaino, 290 F.3d at 1051 & n.6 (affirming multiplier of 3.65x in a common fund case, and noting that vast majority of common fund cases result in a multiplier of between one and four); Miller v. CEVA Logistics USA, Inc., No. 2:13-CV-01321-TLN, 2015 WL 4730176, at *9 (E.D. Cal. Aug. 10, 2015) (determining that a

multiplier of 1.56 "falls within the range of multipliers generally awarded to successful class actions in California"). Accordingly, the Court concludes that the request for fees is reasonable and grants Class Counsel $541,666.67 in attorneys' fees.

**B. Costs**

Class Counsel represents to the Court that they incurred litigation expenses in the amount of $29,470.75. (Doc. No. 64-1, Barnes Decl. ¶ 34, Ex. 2.) After reviewing Class Counsel's declaration regarding expenses, the Court concludes that the requested litigation expenses are reasonable, and grants Class Counsel's request for these fees.

Class Counsel also requests the Court approve settlement administration costs in the amount of $11,000. (Doc. No. 64-1, Barnes Decl. ¶ 35.) Simpluris capped its costs at $11,000 for its work noticing the Class and administrating the Settlement. (Id.) Simpluris will continue to administer the Settlement following final approval by calculating settlement payments to all participating Class Members, issuing and mailing settlement checks, and reporting taxes on such payments. (Doc. No. 64-1, Simpluris Decl. ¶ 15, Ex. 3 to Barnes Decl.) The Court finds the settlement administration costs reasonable and approves payment of $11,000 from the Gross Settlement Amount to the Settlement Administrator.

**C. Incentive Payment to Class Representative**

Class Counsel requests a $10,000 incentive payment for the Class Representative Antonio Hirman Santillan. "The criteria courts may consider in determining whether to make an incentive award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Cox v. Clarus Mktg. Grp., LLC, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (citations omitted).

After reviewing these factors, the Court concludes that the requested incentive payment is fair and reasonable. The $10,000 award is well within the acceptable range awarded in

similar cases.  See, e.g., Fulford v. Logitech, Inc., No. 08-CV-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000).  Plaintiff Antonio Hirman Santillan estimates that he has spent over 40 hours participating in various aspects of the matter including: attending meetings with Class Counsel, reviewing discovery and documents, preparing for his deposition and being deposed, and attending the full-day mediation.  (Doc. No. 64-1, Declaration of Antonio Hirman Santillan ("Santillan Decl.") ¶ 6, Ex. 7 to Barnes Decl.)  Plaintiff also signed a broader release than other class members, further justifying enhanced consideration.  (Id. ¶ 8.)  Finally, Plaintiff risked the potential stigma of being a class representative in a class action labor dispute, and he submitted evidence that his name appears in Google searches in connection with this lawsuit, which may affect his future employment prospects.  (Id. ¶ 10; Doc. No. 64-1, Santillan Decl., Ex. A.)  Accordingly, the Court approves the $10,000 incentive payment for Plaintiff Antonio Hirman Santillan.

## CONCLUSION

The Court has jurisdiction over the subject matter of this action and all parties to the action, including the Settlement Class Members, FLSA Members, and PAGA Members. First, the Court certifies the settlement and collective class and grants final approval of the settlement.  The Court approves the PAGA civil penalties.  All persons who satisfy the class definitions and did not opt out of the settlement classes by the deadline are Class Members, FLSA Members, and/or PAGA Members bound by this Order.  The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution.  Second, the Court grants Class Counsel $541,666.67 in attorneys' fees and $29,470.75 in litigation expenses; and grants $11,000 to the Settlement Administrator.  The Court also grants Plaintiff Antonio Hirman Santillan an incentive award of $10,000.  The attorneys' fees, costs, and incentive award will be paid out of the Gross Settlement Amount.

The Court reserves jurisdiction over the implementation, administration, and enforcement of this settlement.  The Court dismisses the action with prejudice, and no cost

1   shall be awarded other than those specified in this Order or provided by the Settlement
2   Agreement.  The Clerk of the Court is instructed to close this case.
3        **IT IS SO ORDERED.**
4   DATED: February 13, 2024
5
6        MARILYN L. HUFF, District Judge
     UNITED STATES DISTRICT COURT
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3:21-cv-1257-H-KSC